LOUIS LESIEUR, ADMINISTRATOR, APPELLANT, V. OCTAVE SIMON ET AL., APPELLEES.

FILED APRIL 19, 1905.   No. 13,728.

1. **Limitation of Action.** The four years' period of limitation fixed by statute on actions to set aside fraudulent conveyances is not tolled by the death of the fraudulent grantor.

2. **Evidence** examined, and *held* to support the judgment of the district court.

APPEAL from the district court for Sarpy county: GEORGE A. DAY, JUDGE. *Affirmed.*

*McNish & Graham* and *George A. Eberly,* for appellant.

*W. W. Young, contra.*

OLDHAM, C.

This was an action in the nature of a creditors' bill, filed by the plaintiff in the court below as administrator of the estate of Alexander Simon, deceased. The proceeding was instituted to set aside certain conveyances made by the deceased in his lifetime of personal and real property to his children and heirs at law. At the trial of the cause in the district court, judgment was rendered in favor of defendants, from which plaintiff appeals to this court.

It appears that on November 29, 1901, Alexander Simon died intestate in Sarpy county, Nebraska, leaving as his sole heirs at law defendants Octave Simon, Edmund Simon, Gustave Simon and Mary Simon; and that on April 15, 1902, a petition was filed in the county court of Sarpy county by certain creditors of the deceased praying for the appointment of an administrator of the estate of the deceased; and that on July 16, 1902, letters of administration were issued to the plaintiff herein who immediately qualified as such administrator; and that on September 4, 1902, claims were allowed against the estate as follows: L. J. Horton, $661.47; George W. Young and George A. Eberley, $44.82; and the firm of Young & Eberley $81.61. That on September 1, 1902, the plaintiff filed his report setting forth the fact that there was no real or personal property belonging to said estate that could be found by him, and on January 29, 1903, instituted this cause of action. Prior to the 7th day of February, 1901, the deceased and his sons and daughter resided in Stanton county, Nebraska. The claim of L. J. Horton was founded originally on an account for goods and merchandise sold to the deceased in the year 1894. This account was placed in judgment in the county court of Stanton county on April 5, 1898, and the transcript of this judgment was filed in the district court for Stanton county, and an execution was issued thereon which was returned *nulla bona*. The claim in favor of George W. Young and George A. Eberley was founded upon an indebtedness evidenced by a promissory note dated the 29th day of January, 1896, which claim was subsequently reduced to judgment, and a transcript of said judgment was duly filed in the office of the clerk of the district court for Stanton county long prior to the death of Alexander Simon. The claim of Young & Eberley is based upon a promissory note dated January 29, 1896, due one year after date.

The first conveyance alleged against in the petition is an assignment of a school land contract by deceased to his daughter Mary Simon, which assignment bore date July

27, 1894, but was not recorded until September 11, 1899. The evidence, however, clearly shows that from the date of the assignment of this contract defendant Mary Simon was in possession of the lands claiming them as her own, and that these facts were well known to the creditors for whom plaintiff sues, and that, on September 11, defendant, for a valuable consideration and in good faith, assigned this contract to one Dr. Person, subject to the indebtedness due the state, and that this assignment to Dr. Person was at once filed for record. As there is no evidence in the record to impeach the *bona fides* of this transfer, it need be considered no further. The next conveyance alleged against is a bill of sale of certain personal property made by deceased on the 28th day of December, 1897, to his son Octave Simon. This bill of sale was duly recorded in the office of the county clerk of Stanton county at the time it was delivered, and the creditors of deceased had actual as well as constructive notice of this conveyance. Another bill of sale of the 26th day of November, 1898, from deceased to his son Octave Simon conveying personal property therein described is also alleged against. This bill of sale was duly filed for record November 26, 1898, and the evidence clearly shows that the creditors had actual as well as constructive notice of this conveyance from the time of its recording. Another conveyance alleged against is a chattel mortgage from deceased to his son Edmund Simon, bearing date December 29, 1897, and filed for record on said day, and of this the evidence shows that the creditors had actual as well as constructive notice from the time of the filing.

It being established that the creditors of the estate had actual as well as constructive notice of these conveyances for more than four years before the institution of this suit, this action to set them aside is plainly barred by the statute of limitations, unless such statute is tolled by the death of Alexander Simon. At the time of Simon's death the statute had run for more than three, and nearly four, years. It is conceded that the general rule is that when

the statute begins to run it runs continuously; this rule being subject to only such exceptions as are plainly provided in the statute, and to cases in which the party entitled to bring the action is restrained by some legal process from doing so. Section 20 of the code tolls the statute when the cause of action accrues against a person outside of the state until he comes into the state, and also provides that if, after the cause accrues, he depart from the state, the time of his absence from the state shall not be computed as any part of the period within which the action must be brought. This section of the statute has no application to the case at bar, as deceased and all the defendants have lived continuously in the state since each of the several causes of action accrued, and there is nothing in this section suspending the operation of the statute because of the death of a resident defendant. Section 17 of the code provides that absence from the state, death, or other disability of a nonresident shall not operate to suspend the period within which actions *in rem* shall be commenced by and against such nonresident or his representative. Now, the action in this case partakes largely of the nature of an action *in rem*, its object being to fix the status of the property alleged to have been conveyed by the conveyances assailed, and subject it to the payment of the claims against decedent's estate. In the case of *Lantry v. Parker*, 37 Neb. 353, an action to quiet title was held to be an action *in rem* within the meaning of section 17 of the code. In this case, IRVINE, C., speaking for the court, quotes with approval the language of Mr. Justice Field in *Pennoyer v. Neff*, 95 U. S. 714, 734, in which he says:

"It is true that, in a strict sense, a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such

are cases commenced by attachment against the property
of debtors, or instituted to partition real estate, foreclose
a mortgage, or enforce a lien.   So far as they affect prop-
erty in the state, they are substantially proceedings *in
rem,* in the broader sense which we have mentioned."

It is further held in this opinion that the object of
section 17 of the code was to prevent the too general ap-
plication of section 20, and to permit the statute to run
in those cases wherein constructive service on plaintiff
might proceed notwithstanding his absence.   We there-
fore conclude that the death of the alleged fraudulent
grantor does not toll the statutory period in which ac-
tions to set aside fraudulent conveyances must be brought,
and that the learned trial court was right in holding that
the action to set aside these conveyances was barred by
the statute of limitations.   This case is in harmony with
the earlier holding of this court in *Hurley v. Estes,* 6
Neb. 386.

There is one other conveyance alleged against in the bill,
and that is a conveyance from John Koch of three lots in
the original town of Gretna, Sarpy county, Nebraska,
which was made and executed to the defendants on the
7th day of February, 1901.   The petition alleged that
this property was purchased with means furnished by the
deceased, and that the defendants held it as trustees of
the deceased.   There is no evidence in the record to in
any way sustain this allegation.   On the contrary the
testimony clearly shows that this property was purchased
by the defendants with their own means, and that de-
ceased never had or claimed any interest in the property.
Consequently, the finding of the trial court that this con-
veyance was made in good faith and for a valuable con-
sideration, and that deceased had no interest in it, is fully
supported by the evidence.

We therefore recommend that the judgment of the dis-
trict court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.